## FIDELITY AND DEPOSIT COMPANY OF MARYLAND *vs.* GOTTLIEB FREUD, GUARDIAN OF LILLIAN C. FREUD, A MINOR.

*Orphans' Court; powers. Guardian and ward; borrowing ward's money; interest. Investment of funds. Code, Article 93, sections 166, 172, 177, 189, 192, 241. Fiduciaries; interest.*

An order of the Orphans' Court passed in virtue of its lawful discretion will protect a guardian acting under it.  p. 31

Orphans' Courts are tribunals of special and limited jurisdiction, with only the authority conferred by statute.  p. 31

Sections 166, 172, 189, 192 and 241 of Article 93 of the Code of Public General Laws, relating to the substitution or investment of the property of their wards by guardians, do not authorize the loan of a ward's money to the guardian himself.  p. 32

A fiduciary is prohibited from borrowing the trust funds or going through the form of borrowing for his own use.  p. 33

No one should be allowed to have an interest against his duty.                                    p. 33

Power to invest in securities does not give a guardian permission to retain or use the money of his ward merely upon a promise to repay.                                    p. 33

A fiduciary who employs the money of the trust for his own benefit is always chargeable with interest.      pp. 33-34

The retention of money in the hands of the investor can not be said to amount to an investment.            p. 34

An investment involves the idea of the clothing or investiture of the fund with new and definite attributes.      p. 34

An order of the Orphans' Court authorizing a guardian to invest the money of his ward in his own promissory note, payable twelve years after date with interest at 6 per cent., is beyond the Court's jurisdiction; and the guardian should be required to account for the fund as cash in his hand uninvested.                                    p. 34

Section 177 of Article 93 of the Code of Public General Laws, providing that a guardian shall not be charged interest for any balance of money in his hands unless he shall consent to take the same on interest, does not contemplate allowing the guardian to use any unexpended balance of the income temporarily, nor does it refer to investments of the *corpus* of the estate.                                    p. 34

*Decided February 3rd, 1911.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Washington Bowie* (with whom was *H. R. Clark Hickey* on the brief), for the appellant.

*John S. Leon* submitted a brief, for the appellee.

URNER, J., delivered the opinion of the Court..

The Orphans' Court of Baltimore City, with one of its members dissenting, passed an order authorizing the appellee as guardian to invest in a promissory note to be executed by himself individually the sum of fifteen hundred dollars of the money of his ward. This appeal is taken from a subsequent order of that Court overruling the appellant's objections, as surety on the guardian's bond, to the recognition of the loan as an investment. The single question to be considered is whether the Orphans' Court had jurisdiction to permit the guardian to borrow a part of the fund committed to his care. If it was possessed of such discretion under the law, it is clear that the passage of the order would serve as a protection to the guardian and his bond in reference to the act thus authorized. *Carlysle* v. *Carlysle,* 10 Md. 447; *O'Hara* v. *Shepherd,* 3 Md., Ch. 306. The right of the appellant, therefore, to question this particular transaction must be sustained, if at all, upon the theory that it was not within the power of the Court below to sanction such a disposition of the guardianship funds as the one here involved.

It is a familiar principle that Orphans' Courts in this State are tribunals of special and limited jurisdiction and have only such authority as is conferred by statute. *Snook* v. *Munday,* 90 Md. 701; *Stanley* v. *Safe Deposit Co.,* 87 Md. 450; *Bowie* v. *Ghiselin,* 30 Md. 553; *Grant Coal Co.* v. *Clary,* 59 Md. 445; *Code,* Art. 93, sec. 260. The primary inquiry must accordingly be directed to the statutory provisions relating to the powers and duties of these Courts with respect to guardianship investments. They are directed by section 171 of Article 93 of the Code to "order the guardian who has received * * * * * moneys belonging to his ward, to invest the same in mortgages on unincumbered real estate, worth at least double the amount loaned, or such public stock, permanent funds, or other good securities to be selected by said guardian, as will yield the highest rate of interest that can reasonably be had, or they may, when it is clearly for the benefit of the ward, order the same to be

invested in land; and the investment selected shall be reported to the Court for its approval before becoming permanent, and the increase or surplus income of such investment * * * shall be invested in like manner under the direction and approval of the Court."

By section 172 of the same Article it is provided that "All moneys invested under the preceding section shall be invested in the name of the ward, and shall be transferable only under the order of the Orphans' Court; and all transfers without such order shall be void; and whenever the Orphans' Court shall in its discretion authorize a guardian to invest or mortgage the proceeds of the sale of real estate belonging to his ward and sold by a trustee in equity, the affidavit of consideration of such mortgage shall be made by the guardian of such ward."

Section 166 empowers the Court to order the proceeds of the sale of leasehold estates of the ward to be invested in "bank stock or any other good security."

It is provided by section 241 that the Court may in its discretion order any administrator or guardian "to bring into Court, or place in bank, or invest in bank or other incorporated stock, or any other good security, any money or funds received by such administrator or guardian; and the Court shall direct the manner and form in which such money or funds shall be placed in bank or invested, and the same shall at all times be subject to the order and control of the Court."

In sections 189 and 192, which are concerned with the transfer of the estate to a substituted guardian or to the ward at majority, the delivery is required to include "bonds, notes and evidences of debt" and "bonds and other securities."

These provisions fully authorize the Orphans' Court to direct investments by guardians in such *good security* as they may approve in the exercise of a sound judicial discretion, but the question here to be determined is whether an order for the loan of the ward's money to the guardian himself is within the power thus conferred. We can have no hestitation in answering this question in the negative. An

investment, if such it may be called, in which the guardian has a personal interest adverse to that of the ward is manifestly not entitled to be regarded as a "good security." One of the rules universally recognized as applicable to every fiduciary is that which prohibits him from borrowing the trust funds "or going through the form of borrowing for his own use." 2 *Pomeroy Eq. Jur.,* sec. 1076; *Perry on Trusts & Trustees,* 6th ed., secs. 461 and 464. It was said by LORD ELLENBOROUGH, in 1 Camp. 537, as quoted in *Ricketts v. Montgomery,* 15 Md. 51, that "No man should be allowed to have an interest against his duty." It has been declared by this Court that no one having fiduciary duties to discharge should "be allowed to enter into any engagements in which he has, or can have, a personal interest conflicting, or which may possibly conflict, with the interests of those whom he is bound to protect." *Hoffman Steal Coal Co. v. Cumberland Coal & Iron Co.,* 16 Md. 507. This principle has been applied in *Pairo v. Vickery,* 37 Md. 485; *Smith v. Townshend,* 27 Md. 369; *North Amer. Assoc. v. Caldwell,* 25 Md. 420; *Mason v. Martin,* 4 Md. 124, and many other cases. The reason upon which it is founded is too obvious to need discussion.

There is nothing in the statutory provisions to which we have referred to justify the inference that they were intended to authorize the Orphans' Courts to allow the disregard of the salutary rule just stated. Certainly a power to order "investments" in "securities" cannot be held to support an affirmative permission to a guardian to retain and use the money of his ward merely upon a promise of repayment. This is in reality no investment at all. It leaves the guardian in practically the same position towards the estate as if the funds were kept uninvested. His execution of a promissory note subjects him to no greater liability and affords the ward no better security. The responsibility for repayment is the same in either event. The stipulation in the note for the payment of interest adds nothing to the guardian's obligation in that respect, for a fiduciary who employs

the money of the trust for his own benefit is always charge-
able with interest. *Dorsey* v. *Banks,* 70 Md. 510; *Mickle* v.
*Cross,* 10 Md. 362; *Smith* v. *Darby,* 39 Md. 268; *Real
Estate Trust Co.* v. *Union Trust Co.,* 102 Md. 54.

The retention of money in the hands of the investor can
not be said to amount to an "investment." The accepted
definitions of that term, as well as its derivation, involve the
idea of the *clothing* or *investiture* of the fund with new and
different attributes. To "invest," according to 23 *Cyc.* 348,
means: "To convert into some other form of wealth, usually
of a more or less permanent nature." *Webster's New Inter-
national Dictionary* defines an "investment" to be "the lay-
ing out of money in the purchase of some species of prop-
erty, especially a source of income or profit." In *Neal* v.
*Beach,* 92 Pa. St. 226, the term was said to be "commonly
understood as giving money for some other property;" and
it has also been defined to be "the laying out of money in
such manner that it may produce a revenue." *Drake* v.
*Crane,* 127 Mo. 103; *Una* v. *Dodd,* 39 N. J. Eq. 173.

It is perfectly apparent that the transaction presented in
this record is very far from being described by any of the
definitions we have quoted. The order complained of author-
ized the guardian "to withdraw from the fund on deposit in
the Eutaw Savings Bank in the name of said minor the sum
of fifteen hundred dollars and to invest the same" in his
own promissory note "payable twelve months after date, with
interest at 6% per annum." This was equivalent to direct-
ing the guardian to "invest" the money by simply retaining
it in his own possession. In our opinion the Orphans' Court
was without jurisdiction to pass such an order, and the guar-
dian should be required to account for the fund as cash in
his hands uninvested.

It is provided by section 177 of Article 93 of the Code,
that "Every account of a guardian shall state his expenditures
in maintaining and educating his ward, not exceeding the
income of his estate, unless allowed by the Court; and for
no balance of money in his hands shall he be charged inter-

est, unless he shall consent to take the same on interest, but the Court may direct him to invest the same, and for the trouble and care of such guardian the Court may allow any commission not exceeding ten per cent. on the annual income of the estate."

This section was evidently intended to deal with the disposition of the *income* of the ward's estate, and it appears to contemplate that the guardian might be allowed, upon agreeing to pay interest to use an unexpended balance of the income temporarily. It clearly does not refer to investments of corpus such as the one now under consideration. But even as regards the application of income the section recognizes the distinction between an investment of the funds and their retention and use by the guardian.

The order appealed from overruled exceptions filed by the appellant to a statement of account by the guardian on the ground that it treated the money of the estate as being invested to the extent of fifteen hundred dollars in the promissory note in question. We will reverse the order and remand the case to the end that suitable provision may be made for the due investment of the fund.

*Order reversed and cause remanded, with costs to the appellant.*